# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID A. LEDOUX, | * |
| *Plaintiff*, | * |
| v. | *   Civil Action No. RDB-24-2168 |
| SUBCOM, LLC, | * |
| TRANSOCEANIC CABLE SHIP COMPANY, LLC, | * |
| T.E. CONNECTIVITY CORPORATION, | * |
| *Defendants*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

In this maritime law action, Plaintiff David A. Ledoux ("Plaintiff" or "Captain Ledoux") seeks damages related to his detention in Indonesia while working as a seaman aboard the cable-laying vessel M/V RELIANCE. (ECF No. 1 ¶¶ 4, 6, 11, 12.) In October 2021,[1] Captain Ledoux allegedly was detained by Indonesian officials for some twenty-one days after he anchored M/V RELIANCE fifty-one nautical miles off the coast of Indonesia. (*Id.* ¶¶ 16–18, 20, 22–24.) Captain Ledoux alleges that M/V RELIANCE was owned and operated by Defendants SubCom, LLC ("SubCom"); Transoceanic Cable Ship Company, LLC ("Transoceanic Cable") (collectively with SubCom, "SubCom Defendants"); and T.E. Connectivity Corporation ("TE Connectivity") (collectively, "Defendants"). (*Id.* ¶¶ 4–7.) Although Captain Ledoux does not allege the relationship between Defendants, SubCom

---

[1] Although Plaintiff's Complaint (ECF No. 1) alleges that the relevant events occurred in 2022, the proposed Amended Complaint (ECF No. 15-1) corrects those dates to reflect that the relevant events occurred in 2021. For clarity, the Court adopts the 2021 dates in this Memorandum Order.

1

Defendants represent that Transoceanic Cable "is a wholly owned subsidiary of SubCom [and] TE Connectivity sold SubCom, LLC, . . . in November 2018."[2]  (ECF No. 10-1 at 1 n.1.)  On July 26, 2024, Captain Ledoux initiated this action by filing in this Court a three-Count Complaint (ECF No. 1) against Defendants, alleging Jones Act[3] negligence (Count I); unseaworthiness (Count II); and general maritime negligence (Count III).[4]

Presently pending before this Court are SubCom Defendants' Motion to Dismiss (ECF No. 10) ("SubCom Defendants' Motion") and Captain Ledoux's Motion for Leave to File Amended Complaint (ECF No. 15) ("Captain Ledoux's Motion").  Captain Ledoux has responded in Opposition (ECF No. 13) to SubCom Defendants' Motion, and SubCom Defendants have replied (ECF No. 14).  Additionally, SubCom Defendants have responded in Opposition (ECF No. 16) to Captain Ledoux's Motion, and the time to file a reply has passed.  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons that follow, Captain Ledoux's Motion to File Amended Complaint (ECF No. 15) is GRANTED, and SubCom Defendants' Motion to Dismiss the Original Complaint (ECF No. 10) is DENIED AS MOOT.  Defendants shall file a pleading responsive to the First Amended Complaint (ECF No. 15-1) within fourteen (14) days of the date of this Memorandum Order.

---

[2] As of the date of this Memorandum Order, TE Connectivity, as an alleged former owner of SubCom, LLC, has not filed a response.

[3] The Merchant Marine Act of 1920, 46 U.S.C. § 30104 *et seq.*, commonly known as the Jones Act, extends the Federal Employer's Liability Act ("FELA") to seamen.  *See O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 38, 40 (1943).  Although traditional maritime law did not allow seamen a right to recovery for injury or death, under the Jones Act, seamen may bring personal injury actions against their employers for injuries sustained in the course of their employment. *Id.* at 38–41.

[4] Captain Ledoux invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1333 and the Merchant Marine Act of 1920, 46 U.S.C. § 30104 *et seq.*, ("Jones Act").  (ECF No. 1 ¶¶ 1, 2.)

## BACKGROUND

For the purposes of the pending motions, this Court accepts as true all facts alleged in Captain Ledoux's Complaint (ECF No. 1) and proposed First Amended Complaint (ECF No. 15-1). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

Captain Ledoux is a resident of North Carolina who was employed by Defendants as a seaman—and specifically as captain—aboard the cable-laying vessel M/V RELIANCE.[5] (ECF No. 1 ¶¶ 4, 8–10.) SubCom and Transoceanic Cable are Delaware limited liability companies with their principal places of business in New Jersey; and TE Connectivity, doing business as C.S. Tyco Reliance, is a Pennsylvania corporation with its principal place of business in New Jersey.[6] (ECF No. 1 ¶¶ 5–7.) Captain Ledoux alleges that all Defendants do business at 1011 E. McComas Street in Baltimore, Maryland, and they owned and/or operated M/V RELIANCE. (*Id.*) Captain Ledoux alleges that, on September 30, 2021, at the instruction of Defendants' agent, Ben Line Agencies—Singapore ("Ben Line Agencies"), he anchored M/V RELIANCE fifty-one nautical miles off the coast of Indonesia. (*Id.* ¶¶ 11, 12.) According to Captain Ledoux, however, Defendants did not inform him that Protection and Indemnity Clubs ("P&I Clubs")[7] had warned them "about the Indonesian Navy unlawfully detaining vessels and seamen off" the coast of Indonesia. (*Id.* ¶ 13.) Captain Ledoux alleges

---

[5] Captain Ledoux alleges that M/V RELIANCE is assigned U.S. Coast Guard Official Number 9236494. (ECF No. 1 ¶ 5.)
[6] Captain Ledoux alleges that each Defendant is either the owner or the owner *pro hac vice* of M/V RELIANCE. (ECF No. 1 ¶¶ 5–7.) "Under maritime law, an 'owner *pro hac vice*' of a vessel is 'one who stands in the place of the owner for the voyage or service contemplated and bears the owner's responsibilities, even though the latter remains the legal owner of the vessel.'" *Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 262–63 (D.S.C. 2022) (quoting *McAleer v. Smith*, 57 F.3d 109, 112 (1st Cir. 1995)).
[7] "Protection and Indemnity Clubs are associations of ship owners who band together to provide insurance." *Liberty Woods Int'l, Inc. v. Motor Vessel Ocean Quartz*, 219 F. Supp. 3d 494, 495 n.1 (D.N.J. 2016).

that had he received notice of the warning he would not have anchored M/V RELIANCE at the instructed location.  (*Id.* ¶¶ 14–15.)

Plaintiff alleges that, on October 2, 2021, armed Indonesian Navy personnel boarded M/V RELIANCE on the basis that it was illegally anchored in Indonesian waters.  (*Id.* ¶ 16.)  The Indonesian Navy personnel ordered Captain Ledoux to anchor M/V RELIANCE in Batam Harbor, near Batam, Indonesia, so that the vessel could be inspected for seaworthiness.  (*Id.* ¶ 17.)  After Captain Ledoux anchored M/V RELIANCE in Batam Harbor, the Indonesian Navy personnel ordered him ashore for questioning and arrested him for an alleged illegal anchoring and violation of the United Nations Convention on the Law of the Sea.[8]  (*Id.* ¶¶ 18–19.)  Captain Ledoux alleges that, due to Defendants' failure to warn him of the risk of detention, he spent twenty-one days in an Indonesian jail in abysmal conditions.  (*Id.* ¶¶ 20, 22, 23.)  He alleges that he suffered injuries such as gastrointestinal issues, exposure, lack of sleep, post-traumatic stress disorder, and ongoing physical limitations due to his detention.  (*Id.* ¶¶ 22, 24.)

On July 26, 2024, Captain Ledoux initiated the instant action by filing in this Court a three-Count Complaint alleging Jones Act negligence (Count I); unseaworthiness (Count II); and general maritime negligence (Count III) against all Defendants.  (ECF No. 1 at 5–10.)  In

---

[8] The United Nations Convention on the Law of the Sea ("UNCLOS") is an international treaty that provides "that a nation's sovereignty covers only 'the territorial sea.'" *United States v. Beyle*, 782 F.3d 159, 166 (4th Cir. 2015) (quoting U.N. Convention on the Law of the Sea art. 2, *opened for signature* Dec. 10, 1982, 1833 U.N.T.S. 397 (entered into force Nov. 16, 1994)).  The United States is not a signatory to the UNCLOS, but the Supreme Court has noted that, in briefing, the United States "has recognized that its baseline provisions reflect customary international law." *Id.* (quoting *United States v. Alaska*, 503 U.S. 569, 588 n.10 (1992) (citations omitted)); *see also* CONG. RSCH. SERV., UNITED NATIONS CONVENTION ON THE LAW OF THE SEA (UNCLOS): LIVING RESOURCES PROVISIONS (2025), https://www.congress.gov/crs_external_products/R/PDF/R47744/R47744.9.pdf (summarizing history and content of UNCLOS).

the Jones Act negligence claim in Count I, Plaintiff alleges that Defendants were negligent by failing to provide a safe place to work; failing to warn him "of a dangerous condition and the Indonesian Navy's actions with other vessels;" failing to provide him information required for him to safely complete his work; failing to hire a competent steamship agent; hiring a corrupt steamship agent; and allowing M/V RELIANCE to anchor at the location at which it was boarded by the Indonesian Navy. (*Id.* ¶ 26.) Relatedly, in his unseaworthiness claim in Count II, he alleges that Defendants failed to provide a seaworthy vessel because "the methods, practices, and procedures" related to M/V RELIANCE's operation "were unseaworthy." (*Id.* ¶ 36.) Specifically, he alleges that Defendants did not provide proper procedures for communicating P&I Club warnings about anchoring off the coast of Indonesia and hired a corrupt, incompetent, and improperly trained steamship agent. (*Id.*) Finally, in the general maritime negligence claim in Count III, Captain Ledoux alleges that Defendants negligently allowed M/V RELIANCE to anchor and failed to (1) assist him in safely completing his duties; (2) provide a safe place to work; (3) warn him of a dangerous condition and the Indonesian Navy's actions in relation to other vessels; and (4) properly hire a competent steamship agent. (*Id.* ¶ 47.)

On September 27, 2024, SubCom Defendants timely filed their Motion to Dismiss (ECF No. 10). Plaintiff responded in Opposition (ECF No. 13), and SubCom Defendants replied (ECF No. 14). On December 23, 2024, Plaintiff filed a Motion for Leave to file an Amended Complaint (ECF No. 15), including as an exhibit the proposed Amended Complaint (ECF No. 15-1). SubCom Defendants responded in Opposition (ECF No. 16), and the time to file a reply has passed. As noted above, TE Connectivity is alleged to have been a former

5

owner of SubCom Defendants and has not yet filed a responsive pleading. The parties' motions are now ripe for review.

## STANDARD OF REVIEW

### I. Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his complaint once "as a matter of course at any time before a responsive pleading is served" or "by leave of court or by written consent of the adverse party." In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." FED. R. CIV. P. 15(a)(2); *see also Lance v. Prince George's Cnty., Md.*, 199 F. Supp. 2d 297, 300–301 (D. Md. 2002). The U.S. Court of Appeals for the Fourth Circuit has stated that Rule 15 "gives effect to the federal policy in favor or resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The matter, however, is committed to the discretion of the district court, *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011), and the district judge may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). As this Court has repeatedly explained, an amendment is insufficient or frivolous if it would not survive a motion to dismiss. *See, e.g., 401 N. Charles, LLC v. Sonabank*, Civ. No. RDB-17-0872, 2018 WL

6570680, at *2 (D. Md. Dec. 13, 2018) (citing *Whitaker v. Ciena Corp.*, Civ. No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018)).

## II. Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. Twombly, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably

7

infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## ANALYSIS

### I. Motion for Leave to Amend (ECF No. 15)

In his proposed Amended Complaint (ECF No. 15) Captain Ledoux clarifies that Transoceanic Cable is "a wholly owned subsidiary of Defendant SubCom;" "Transoceanic Cable . . . and/or SubCom hired Plaintiff to serve as captain of M/V RELIANCE;" and SubCom was his contact point for "payroll matters." (ECF No. 15-2 ¶¶ 4, 8, 9.) Additionally, he replaces allegations that the Indonesian Navy acted unlawfully with allegations that it claimed that the ships it detained were anchored illegally. (*Id.* ¶¶ 15, 22.) He also revises which Defendants are subject to each Count: the Jones Act negligence claim in Count I is now alleged against SubCom Defendants; the unseaworthiness claim in Count II is now alleged against TE Connectivity; and Count III now alleges unseaworthiness against SubCom. (*Id.* at 7, 9, 12.) Finally, he alleges three additional Counts: unseaworthiness against Transoceanic Cable (Count IV); general maritime negligence against TE Connectivity (Count V); and, in the alternative, general maritime negligence against SubCom (Count VI). (*Id.* at 14–21.)

In Opposition (ECF No. 16), SubCom Defendants revive their argument from their Motion to Dismiss (ECF No. 10) that Captain Ledoux's claims are barred by the act of state doctrine.[9] Where possible, the Court applies SubCom Defendants' arguments in their Motion

---

[9] Notably, SubCom Defendants assert futility based on the act of state doctrine and do not reiterate many of their other arguments for dismissal. *See generally* (ECF No. 16). Accordingly, the Court addresses their opposition on this basis alone and, where applicable, applies SubCom Defendants' act of state doctrine argument as raised in both their original Motion to Dismiss (ECF No. 10-1) and their Opposition to Plaintiff's Amended Complaint (ECF No. 16). Separately, the Court notes that Captain Ledoux's Opposition (ECF No. 13) and proposed Amended Complaint (ECF No. 15-1) facially address many of SubCom Defendants'

to Dismiss (ECF No. 10-1) to the Amended Complaint. Under the act of state doctrine, federal courts must abstain from determining an action that requires them to "declare invalid, and thus ineffective as 'a rule of decision for the courts of this country,' the official act of a foreign sovereign." *W.S. Kirkpatrick & Co., Inc. v. Env'l Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990) (internal citation omitted). SubCom Defendants contend that leave to amend should be denied in this case because Captain Ledoux has not materially altered his allegations such that his claims still depend on the effect of official Indonesian actions. (*Id.* at 3.) SubCom Defendants' invocation of the act of state doctrine is somewhat unclear,[10] but they appear to contend that it renders amendment futile because (1) they only had duty to warn Captain Ledoux of the risk of detention if Indonesian officials were invalidly detaining vessels; and (2) they did not cause Captain Ledoux's injuries in Indonesian custody. *See* (ECF No. 16 at 14–

---

arguments for dismissal. SubCom Defendants initially raised the following bases for dismissal: (1) "Plaintiff executed a release of his claims;" (2) "Plaintiff failed to file a grievance/arbitration a required by the terms of his collective bargaining agreement;" (3) "Plaintiff alleges both Defendants are his employer, and the Jones Act only permits as claim against a single employer;" (4) "The general maritime law does not provide for a negligence claim against an employer—as Plaintiff contends both Defendants are—as alleged in [original] Count III;" and (5) "Plaintiff identifies no duty under his general maritime negligence claim in Count III that is distinct from the duties it alleges Defendants had as his employer under Count I, under the Jones Act." (ECF No. 10-1 at 2.)

Captain Ledoux's Opposition (ECF No. 13) attaches a sworn statement that he did not sign any release, (ECF No. 13-1 ¶¶ 2–3), and disputes the applicability of the parties' collective bargaining agreement. (ECF No. 13 at 1–9.) His proposed Amended Complaint addresses SubCom Defendants' argument that the Jones Act only allows negligence claims against one employer by (1) dividing his claims to allege them against each SubCom Defendant individually; (2) clarifying that Transoceanic Cable is "a wholly owned subsidiary of . . . SubCom;" and (3) alleging that he dealt with SubCom regarding payroll matters. (ECF No. 15-2 ¶¶ 4, 8–9.) Similarly, he addresses SubCom Defendants' arguments regarding general maritime negligence by bringing Count V against TE Connectivity only and bringing Count VI in the alternative against SubCom. (*Id.* at 18–19.)

[10] SubCom Defendants repeatedly assert that Indonesian acts must be presumed valid and therefore the act of state doctrine bars adjudication of this claim. (ECF No. 10-1 at 4–6; ECF No. 14 at 1, 4–8, 11.) They do not directly explain, however, how their liability in negligence—as adapted to maritime law—relates to the validity of alleged official Indonesian actions. Additionally, many of SubCom Defendants' arguments rest on their assertion that Captain Ledoux claims the Indonesian Navy acted "illegally" or "unlawfully," but Captain Ledoux has removed that allegation from his proposed Amended Complaint. *Compare* (ECF No. 1 ¶ 13) *with* (ECF No. 15 ¶ 15.)

9

6; ECF No. 10-1 at 3–9; ECF No. 14 at 6, 8–10 (asserting similar argument in relation to original Complaint)).

For the purposes of SubCom Defendants' Opposition to amendment in this case, the Court assumes without deciding that the actions of the Indonesian Navy were official acts by the government of Indonesia. The act of state doctrine arose from "the highest considerations of international comity and expediency" but has evolved to "reflect[] 'the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs . . . ." *Kirkpatrick*, 493 U.S. at 404 (first quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 303–304 (1918); and then quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964)). The Supreme Court has squarely held, however, that "[a]ct of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *Id.* at 406. Thus, federal courts have declined to apply the act of state doctrine where "[t]he issue in th[e] litigation is not whether [the alleged] acts are valid, but whether they occurred." *Id.* (quoting *Sharon v. Time, Inc.*, 599 F. Supp. 538, 546 (S.D.N.Y. 1984)); *see also Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 145 (2d Cir. 2022) (declining to apply act of state doctrine where claim "depend[ed] not on 'whether the alleged acts are valid, but whether they occurred' in a way that gives rise to liability" (quoting *Sharon*, 599 F. Supp. at 546)); *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1027 (6th Cir. 1990) (explaining "that the act of state doctrine does not 'bar[] a court in the United States from entertaining a cause of action that . . . require[s] imputing to foreign officials an unlawful motivation . . . in the performance of . . . an official act." (alterations in

10

original) (quoting *Kirkpatrick*, 493 U.S. at 702)). In this case, the allegations depend not on the propriety of the Indonesian Navy's alleged acts but on the foreseeability of any such acts.

As explained above, "a district court may deny leave if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules,'" including Rule 12(b)(6). *United States ex rel. Wilson v. Kellogg Brown & Boot, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)); *In re Triangle Cap. Corp. Secs. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). As Judge Bredar of this Court has explained, "claims of futility based on susceptibility to dismissal under Rule 12(b)(6) must identify deficiencies that are 'obvious on the face of the proposed amendment.'" *Daulatzai v. Maryland*, 338 F.R.D. 587, 589 (D. Md. 2021) (quoting *Johnson*, 785 F.2d at 510)). In this case, the act of state doctrine does not render Captain Ledoux's Amended Complaint futile. His amended claims are rooted in SubCom Defendants' negligent acts and thus depend on the foreseeability—not the validity—of the alleged acts of Indonesian officials. *See Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980) ("Liability for a failure to warn thus arises from foreseeability, or the knowledge that particular conduct will create danger."). As explained further below, at this pleading stage, Captain Ledoux has sufficiently alleged claims that depend not on "whether the alleged acts [of Indonesian officials] are valid, but whether they occurred."[11] *Celestin*, 30 F.4th at 145 (quoting *Sharon*, 599 F. Supp. at 548).

---

[11] Counts II and V of the proposed Amended Complaint are alleged solely against TE Connectivity, which has not yet filed a response. SubCom Defendants raise no arguments as to those Counts.

11

### A. Jones Act Negligence

The Fourth Circuit has explained that "to prevail on a Jones Act negligence claim against his employer, a seaman must establish (1) personal injury in the course of his employment; (2) negligence by his employer or an officer, agent, or employee of his employer; and (3) causation to the extent that his employer's negligence was the cause 'in whole or in part' of his injury." *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 436 (4th Cir. 1999) (citing *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc)). As compared to common law negligence claims, Jones Act negligence claims employ a "relaxed . . . standard of causation" such that employers are liable "whenever 'employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.* (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 543 (1994)).

In proposed Count I, Captain Ledoux alleges that he was detained by Indonesian officials because agents of SubCom Defendants (1) negligently directed him to anchor M/V RELIANCE in an area with a known risk of detentions; and (2) failed to warn him of the risk even after they became aware of P&I Club warnings that the Indonesian Navy was detaining vessels off the coast of Indonesia. (ECF No. 15-3 ¶¶ 15, 16, 22.) At bottom, therefore, Captain Ledoux alleges failure to warn of a foreseeable risk of detention by the Indonesian Navy. Adjudication of this claim does not require this Court to determine the legality of the Indonesian Navy's actions. Regardless of whether the detention was legal, SubCom Defendants are alleged to have been negligent in directing Captain Ledoux to anchor M/V RELIANCE at a location where they knew he may face detention without first informing him of the risk of detention. Liability hinges "not on whether the [Indonesian Navy's] alleged acts

are valid, but whether they occurred," and the act of state doctrine has no application. *Celestin*, 30 F.4th at 145 (quoting *Sharon*, 599 F. Supp. at 546).

Although SubCom Defendants contend that Captain Ledoux "advances a theory of unlawful and arbitrary arrest," this characterization is inapposite to the questions before the court in the Jones Act claim. Whether the arrest was "unlawful" or "arbitrary," is not relevant to whether SubCom Defendants acted negligently by failing to warn Captain Ledoux of the risk of detention at the location where they instructed him to anchor M/V RELIANCE. In cases where courts have applied to the act of state doctrine to facts involving alleged detentions by foreign governments, the plaintiff has sued *government officials or the government itself* for wrongful detention.[12] *See, e.g.*, *Underhill v. Hernandez*, 168 U.S. 250, 254 (1897) (applying act of state doctrine because "the acts of the defendant [a Venezuelan military official] were the acts of the government of Venezuela"). In this case, the acts of SubCom Defendants are not the acts of the government of Indonesia, and, on the face of the allegations in Plaintiff's proposed

---

[12] To the extent SubCom Defendants argue in a brief footnote in their Reply (ECF No. 14) that any finding that Plaintiff's claims are judiciable would require them to implead the government of Indonesia as a necessary and indispensable party under Rule 19, such argument is not persuasive. *See* (ECF No. 14 at 2–3 n.1). As an initial matter, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 714, 736 n.6 (4th Cir. 2006)). Moreover, SubCom Defendants have not explained why this case proves an exception to the general rule that "it is not necessary for all [alleged] joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp. Ltd.*, 498 U.S. 5, 7 (1990) (reversing lower court's decision labeling joint tortfeasors indispensable parties under Rule 19 and collecting cases holding joint tortfeasors are not indispensable parties under Rule 19(b)); *see also Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) ("Joint tortfeasors are not considered indispensable parties under federal law."); *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 137 (1st Cir. 1989) ("If one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20." (emphasis in original) (internal citations omitted)); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1124–1130 (5th Cir. 1995) (tracing history of joint and several liability in maritime law).

Amended Complaint, the Court need not evaluate the validity of the Indonesian government's activity to adjudicate Plaintiff's claims.

### B. Unseaworthiness Claims

As this Court has recognized, maritime law provides that "[e]very shipowner owes to every member of the crew of its vessel the duty of keeping and maintaining that vessel in a seaworthy condition at all times." *Mitola v. Johns Hopkins Univ. Applied Physics Lab'y*, 839 F. Supp. 351, 357 (D. Md. 1993). "Under general maritime law, '[a] vessel is in seaworthy condition when it is in a condition reasonably suitable and fit for the purpose or use for which the vessel is intended." *Carney v. United States*, 598 F. Supp. 2d 715, 717 (D. Md. 2009) (alteration in original) (quoting *Mitola v. Johns Hopkins*, 839 F. Supp. 351, 357 (D. Md. 1993)). Unlike a claim of Jones Act negligence, a claim of unseaworthiness requires the plaintiff to show that "the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries." *Trawler Miss Vertie Mae*, 187 F.3d at 439 (quoting *Gosnell v. Sea-Land Serv., Inc.*, 782 F.2d 464, 467 (4th Cir. 1986)).

In proposed Counts III and IV, Captain Ledoux alleges that SubCom Defendants failed to provide a seaworthy vessel because "the methods, practices, and procedures relating to [M/V RELIANCE's] operation were unseaworthy . . . ." (ECF No. 15-1 ¶¶ 51, 63.) Specifically, he alleges that the vessel lacked procedures to allow seamen to be informed of warnings from P&I Club and other entities, and its steamship agent was incompetent, improperly trained, and corrupt. (*Id.*) For the same reasons discussed above in relation to the Jones Act negligence claim, Plaintiff's unseaworthiness claims do not require this Court to evaluate the legality of official acts of the Indonesian government. SubCom Defendants'

14

alleged negligent acts—failure to warn and failure to have proper procedures regarding warnings—are distinct from the acts of the Indonesian government. Adjudication of Captain Ledoux's unseaworthiness claim does not implicate any judgment of the validity of official acts of the Indonesian government.[13]

### C. General Maritime Negligence Claim (Count VI)

Finally, Captain Ledoux's general maritime negligence claim, alleged in the alternative in proposed Count VI, does not require this Court to evaluate the official acts of the Indonesian government. As the Fourth Circuit has explained, "[t]he elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law, free of 'inappropriate common law concepts.'" *Evergreen Int'l S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) (quoting Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 5-2 (4th ed. 2004)). Thus, to sufficiently allege general maritime negligence, a Plaintiff must allege "a duty, a breach of that duty, proximate cause, and resulting injury." *Barnett v. United States*, 132 F.4th 299, 311 (4th Cir. 2025) (quoting *Schumacher v. Cooper*, 850 F. Supp. 438, 453 (D.S.C. 1994)). In this case, Captain Ledoux has alleged that SubCom breached its duties to "provide a safe working environment, warn him of dangers and not to injure him or place him

---

[13] Although the stricter causation standard applicable to general maritime negligence claims may give rise to defenses under various theories of proximate causation, adjudication of any such theories requires no judgments regarding the validity of the Indonesian government's acts. *See Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) (discussing causation in context of general maritime law). The critical inquiry of the proximate cause analysis is the foreseeability—not the legality—of the injury alleged and any subsequent acts that contributed to that injury. *Id.* at 312 (citing *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)). As noted above, SubCom Defendants appear to argue in a footnote that the Indonesian government may be partly liable for Plaintiff's injuries. (ECF No. 14 at 2 n.1.) Given that the Amended Complaint no longer alleges that the Indonesian government acted unlawfully and SubCom Defendants raised this argument for the first time in a reply brief, the Court concludes that the Amended Complaint is not futile on this basis. *See Clawson*, 451 F. Supp. 2d at 734 (explaining courts have discretion to decline to reach arguments raised for the first time in reply brief, particularly where opposition does not have an opportunity to respond to the newly raised argument).

15

in a position that he could be injured." (ECF No. 15-1 ¶¶ 84–85.) He further alleges that SubCom failed to: (1) warn him of the dangers of the anchorage location; (2) provide a safe position for anchorage; (3) prevent his arrest; (4) assist him in completing his duties; and (5) hire a competent steamship agent. (*Id.* ¶ 85.) This general maritime negligence claim does not implicate the act of state doctrine because it rests on SubCom's actions and does not involve the legality of the acts of the Indonesian government. Accordingly, amendment is not futile and, consistent with Rule 15(a)'s liberal pleading standard, Plaintiff's Motion for Leave to Amend (ECF No. 15) is GRANTED.

## II. Motion to Dismiss (ECF No. 10)

"Ordinarily, an amended complaint supersedes those that came before it." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). This Court has held that the filing of an Amended Complaint renders moot pending motions to dismiss the original complaint as long as the Amended Complaint addresses the issues raised in the prior motion to dismiss. *See Howard v. Ocwen Loan Servicing, Inc.*, RDB-18-3296, 2019 WL 4750333, at *2 (D. Md. Sept. 30, 2019); *Verderamo v. Mayor & City Council of Balt.*, 4 F. Supp. 3d 722, 724 n.3 (D. Md. 2014). As noted above, Plaintiff's proposed Amended Complaint (ECF No. 15-1) appears to address the concerns raised in SubCom Defendants' Motion to Dismiss (ECF No. 10) the original Complaint. *See, supra*, note 7. To the extent that SubCom Defendants feel Captain Ledoux's Amended Complaint does not sufficiently address their arguments for dismissal, they are free to raise those arguments in a responsive pleading within fourteen (14) days of the date of this Memorandum Order. Accordingly, SubCom Defendants' Motion to Dismiss (ECF No. 10) is DENIED AS MOOT.

## CONCLUSION

For the reasons stated above, it is this 9th day of July, 2025, hereby ORDERED that:

1. Plaintiff's Motion to Amend (ECF No. 15) is GRANTED;

2. SubCom Defendants' Motion to Dismiss (ECF No. 10) is DENIED AS MOOT;

3. Defendants shall file a responsive pleading within fourteen (14) days of the date of this Memorandum Order (i.e., by July 23, 2025); and,

4. The Clerk of this Court shall transmit a copy of this Memorandum Order to counsel of record in this matter.

/s/
Richard D. Bennett
United States Senior District Judge